# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **United States of America ex rel.** ) | |
| **DARYL LINNEAR** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **No. 06 C 4649** |
| ) | |
| **STEVEN C. BRYANT, Warden, and** ) | |
| **Lisa Madigan, Attorney General of** ) | |
| **Illinois,** ) | |
| ) | |
| **Respondents.** ) | |

## <u>MEMORANDUM OPINION</u>

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Daryl Linnear's ("Linnear") petition for a writ of *habeas corpus* ("Petition"). For the reasons stated below, we deny the Petition.

## BACKGROUND

Linnear was convicted in Illinois state court in a bench trial of first degree murder and on February 13, 2001, he was sentenced to twenty years in prison. Linear appealed the conviction and on November 25, 2002, an Illinois appellate court affirmed the trial court. Linear then filed a petition for leave to appeal to the Illinois Supreme Court and the petition was denied on April 2, 2003. Linnear then filed a

post-conviction petition, which was dismissed by an Illinois state trial court on April 30, 2003. On November 5, 2004, an Illinois appellate court affirmed the trial court. Linnear then filed a petition for leave to appeal with the Illinois Supreme Court, which was denied on December 1, 2005. On August 28, 2006, Linnear filed the instant Petition seeking relief pursuant to 28 U.S.C. § 2254.

## LEGAL STANDARD

A district court may entertain a *habeas corpus* petition from a "person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A *habeas corpus* petition shall also not be granted:

> on behalf of a person in custody pursuant to the judgment of a State court . . . unless the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2). A decision by a state court is deemed to be "'contrary to' [the U.S. Supreme Court's] clearly established precedents if it 'applies a rule that contradicts the governing law set forth in [the Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent.'" *Early v.*

*Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

## DISCUSSION

Linnear raises seventeen grounds for relief in his Petition.  Linear argues that he received ineffective assistance of counsel at trial based on his counsel's alleged failure to: call certain defense witnesses at trial (Ground 1), discuss facts with Linnear (Ground 2), ask about a plea bargain (Ground 3), properly cross-examine witnesses (Ground 4), object to hearsay and to conflicting testimony (Ground 5), recognize a conflict of interest (Ground 6), obtain a forensic or scientific expert (Ground 7), object to prosecutorial misconduct (Ground 8), make proper strategic decisions (Ground 9), prepare for trial (Ground 10), properly impeach witnesses (Ground 11), show the bias of witnesses (Ground 12), make an effective closing argument (Ground 13), and to accurately inform Linnear of the pertinent law (Ground 14).  Linnear also alleges separately that the cumulative effect of the above mentioned alleged errors showed that his trial counsel's representation was inadequate (Ground 15) and that the State of Illinois did not prove Linnear guilty beyond a reasonable doubt (Ground 16).  Finally, Linnear contends that his appellate counsel on direct appeal erred by failing to raise the above alleged errors committed by his trial counsel (Ground 17).

We note that in the table of contents of the Petition that contains the heading "Issues Presented for Review," Linnear lists his appellate counsel's representation as

Ground 16.  (Pet. 3A).  However, Linear indicates in the body of the Petition that Ground 16 is his contention that the State did not prove him guilty beyond a reasonable doubt.  Thus, although Linnear did not properly number his grounds in the Petition, he has presented the court with seventeen separate grounds and, for the purposes of analyzing the Petition, the court will treat Ground 16 as Linnear's contention that he was not proven guilty beyond a reasonable doubt and Ground 17 as the ground relating to his appellate counsel.

## I.  Grounds 4, 9, and 15

Respondent contends that Grounds 4, 9, and 15 are procedurally defaulted.  A petitioner's claims are procedurally defaulted unless the petitioner can show that "'he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge.'"  *Simpson v. Battaglia*, 458 F.3d 585, 593 (7th Cir. 2006)(quoting *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005)).  A claim is "fairly presented" to the state appellate courts only if the petitioner "assert[ed] his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings.'"  *Id.* (quoting *Lewis v. Sternes,* 390 F.3d 1019, 1025 (7th Cir. 2004)).  Claims not "fairly presented" to the state appellate courts can only be presented upon a "showing of cause and prejudice to excuse the default," or if "a miscarriage of justice will result if [the court does] not consider the merits of [the] case."  *Daniels v. Knight*, 476 F.3d 426, 430 (7th Cir. 2007)(quoting *Dretke v. Haley,* 541 U.S. 386, 388

(2004)); *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006)(stating that "[e]stablishing cause ordinarily requires demonstrating an external obstacle preventing the petitioner from fairly presenting the federal claim in state court, and actual prejudice, not merely a possibility of prejudice, is required" and that "[t]he miscarriage-of-justice-exception applies when the petitioner can demonstrate that he is actually innocent").

In the instant action, Linnear asserts as Ground 4 that his trial counsel erred by failing to properly cross-examine the State's witnesses. Linnear asserts as Ground 9 that his trial counsel failed to make sound decisions and did not adopt an effective trial strategy. In Ground 15 Linear asserts that the cumulative effects of his trial counsel's alleged errors show that Linnear did not receive adequate representation. Linnear did not raise Grounds 4, 9, or 15 during a full round of the state court appellate proceedings. Linnear did not, for example, include the grounds in his *pro se* petition for leave to appeal and supplemental brief filed on his direct appeal to the Illinois Supreme Court, or in his appeal from the dismissal of his post-conviction petition. (R. Ex. F, G, K). Linnear has not shown cause for his failure to raise the grounds earlier and he has not shown that he will suffer actual prejudice or that a fundamental miscarriage of justice will occur if the court does not entertain them at this juncture. Therefore, Grounds 4, 9, and 15 are procedurally defaulted. We also note that, regardless, we have reviewed Grounds 4, 9, and 15 in detail and conclude that the grounds lack any merit.


II.  Grounds 1-3, 5-8, 10-14

Respondent contends that Grounds 1-3, 5-8, and 10-14 are procedurally defaulted and that, regardless of the default, the grounds lack any merit.

A. Procedural Default

As indicated above, on April 30, 2003, an Illinois state trial court dismissed Linnear's post-conviction petition. Linnear then received appointed counsel for his appeal to the Illinois appellate court. Linnear's appointed counsel filed an appellate brief, which based the appeal solely upon the argument that Linnear was not properly served with notice of the decision of the denial of the post-conviction petition within the statutory prescribed period. (R. Ex. K). On April 29, 2004, Linnear filed a *pro se* motion for leave to supplement his counsel's appellate brief and on April 30, 2004, the Illinois appellate court denied Linnear's motion for leave to supplement. (R. Ex. O). Although, Linnear raised arguments in his proposed supplemental brief concerning Grounds 1-3, 5-8, and 10-14, his motion to supplement was denied and thus the only ground properly presented to the Illinois appellate court and considered on appeal was the one ground presented by Linnear's appellate counsel. Thus, Grounds 1-3, 5-8, and 10-14 are procedurally defaulted since they were not raised through a complete round of the state appellate process. Linnear filed his PLA on direct appeal *pro se* and he has not asserted in the Petition that his appellate counsel handling his post-conviction appeal failed to provide him with effective representation. Linnear has also not shown cause for his failure to raise Grounds 1-3, 5-8, and 10-14 earlier and he has not shown that he will suffer actual prejudice or that a fundamental miscarriage of justice will occur if the court does not entertain

them at this juncture.

## B.  Merit of Grounds 1-3, 5-8, and 10-14

We note that, even if the above mentioned grounds were not procedurally defaulted, the grounds lack any merit.  For an ineffective assistance of counsel claim, a defendant must establish that: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007)(stating that "[t]rial counsel's performance will not be considered deficient unless it falls 'below an objective standard of reasonableness'") (quoting in part *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).  In assessing a counsel's performance, a court must take into consideration that "trial counsel is entitled to a 'strong presumption' that his performance fell 'within the wide range of reasonable professional assistance' and will not be judged with the benefit of hindsight."  *Id.*  (quoting in part *Strickland,* 466 U.S. at 689).

## 1.  Failure to Call Witnesses (Ground 1)

Linnear asserts in Ground 1 that his trial counsel erred by failing to call as witnesses at trial Brenda Driver and George Semerigis.  (Pet. 5).  However, the decision concerning which witnesses to call at trial is a strategic decision that is committed to the professional discretion of a defendant's attorney.  *See Strickland*, 466 U.S. at 689 (1984)(stating that "[t]here are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way"); *United States v. Malone*,

2007 WL 1238870, at *2 (7th Cir. 2007)(stating that "[t]rial tactics are a matter of professional judgment"); *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)(stating that "[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review" and that "'[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him'")(quoting in part *United States v. Balzano,* 916 F.2d 1273, 1294 (7th Cir. 1990)).  Linnear has not explained how the testimony of the two witnesses would have altered the outcome of his case and Linnear has not shown that his counsel's decision not to present the two witnesses was improper.  *See United States v. Best*, 426 F.3d 937, 946 (7th Cir. 2005)(stating that "'[t]hough there may be unusual cases when an attorney can make a rational decision that investigation is unnecessary, as a general rule an attorney must investigate a case in order to provide minimally competent professional representation'")(quoting *Crisp v. Duckworth,* 743 F.2d 580, 583 (7th Cir. 1984)); *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002)(stating that a "defense attorney is not obligated to track down each and every possible witness or to personally investigate every conceivable lead").  Linnear has thus failed to show that the decision by his attorney not to call the two witnesses was improper or that it was an unreasonable decision on his counsel's part.  Linnear has also failed to show that the failure to call the two witnesses caused him any prejudice.  *See United States v. Hall*, 212 F.3d 1016, 1021 (7th Cir. 2000)(stating that "[s]hould the petitioner satisfy the performance prong, he must next fulfill the prejudice prong and demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different'")(quoting in part *United States*

*v. Starnes*, 14 F.3d 1207, 1210 (7th Cir. 1994)).  Therefore, we conclude that Ground 1 lacks any merit.


### 2.  Failure to Discuss Facts (Ground 2)

Linnear asserts in Ground 2 that his trial counsel erred by failing to discuss certain statements with Linear that his counsel allegedly learned of during discovery. Linnear presents nothing other than his own conclusory statement that it is his belief that his counsel allegedly concealed certain statements from him.  Linnear provides no specific facts in the Petition concerning the alleged statements.  Even if Linnear could show that he was not told of the statements, Linnear has failed to show that the statements were of such importance that his counsel should have reasonably specifically informed him of the statements.   There is no requirement that a defense counsel specifically notify his client of every minute piece of information obtained in discovery.  Finally, even if Linnear was not informed of the statements, Linnear has not shown that his case was prejudiced.  Therefore, we conclude that Ground 2 lacks any merit.


### 3.  Failure to Make a Plea Request (Ground 3)

Linnear asserts in Ground 3 that his counsel erred by failing to "offer any plea request of the defendant's [sic]."  (Pet. 5A).  Linnear also asserts that he was deprived of his "right to . . . engage in a plea-barganing [sic] agreement."  (Pet. 5A).

However, Linnear has not provided any specific facts to show that his assertions are based upon anything other than his own speculation.  It is entirely possible that his counsel discussed the possibility of a plea bargain with the State and Linnear's Petition is silent on that point.  Also, the extension of a plea agreement is solely within the discretion of the State.  Linnear does not assert that his counsel rejected any plea agreement that was offered by the State.  The State has the right to prosecute Linnear for the charged offense without extending a plea agreement.  Linnear has no right to enter into a plea agreement with the State.  *See Hall*, 212 F.3d at 1022 (stating that "the successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, . . . as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement"); *United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993)(stating that "[t]he guarantee of counsel in the sixth amendment is designed to promote fair trials leading to accurate determinations of guilt or innocence," but that "[t]he Constitution does not ensure that lawyers will be good negotiators, locking in the best plea bargains available").  Therefore, we conclude that Ground 3 lacks any merit.

### 4.  Failure to Object to Hearsay and Conflicting Testimony (Ground 5)

Linnear asserts in Ground 5 that his trial counsel erred by failing to object to hearsay and to conflicting testimony.  In regards to the hearsay argument, Linnear has failed to specify any evidence that he believed to be hearsay and his general reference to "unsupported hearsay testimony" at trial is too vague.  (Pet. 5B).

Linnear has not provided any facts that show that any evidence was admitted at trial that constituted hearsay. Also, even if Linnear had shown that hearsay was admitted at trial, the decision regarding whether to make an evidentiary objection is part of the trial strategy, which is left to the professional discretion of counsel. Finally, Linnear has not shown that any hearsay evidence was admitted that would have affected the outcome of his case or that he was prejudiced by the admission of the evidence. Therefore, we conclude that Ground 5 lacks any merit.

### 5.  Failure to Recognize Conflict of Interest (Ground 6)

Linnear asserts in Ground 6 that his trial counsel erred by failing to recognize a conflict of interest between Linnear and his counsel. However, Linnear only asserts in a conclusory fashion that a conflict of interest arose "for the lack counsel's [sic] willingness to aid the defendant properly. . . ." (Pet. 5B). Linnear has failed to present any facts that would indicate that his counsel had a conflict of interest that precluded him from representing Linnear at trial. Also, Linnear has failed to show that any alleged conflict of interest prejudiced his case. Therefore, we conclude that Ground 6 lacks any merit.

### 6.  Failure to Call Forensic Expert or Scientific Expert (Ground 7)

Linnear asserts in Ground 7 that his trial counsel erred by failing to call as a witness a forensic expert or scientific expert. However, as is indicated above, the

selection of defense witnesses is a strategic decision that is left to the professional discretion of the trial counsel. *See Williams*, 106 F.3d at 1367 (stating that "[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review" and that "'[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him'")(quoting in part *Balzano,* 916 F.2d at 1294). In addition, the state correctly points out that evidence presented at trial had been evaluated by State forensic investigators, a State forensic pathologist, and a State forensic scientist. (R. Ex. X R116-25). Linnear has not indicated why further scientific expert or forensic expert testimony would have been necessary in this case. Finally, Linnear has not shown that his case was prejudiced by the lack of a scientific or forensic defense expert. Therefore, we conclude that Ground 7 lacks any merit.

### 7. Failure to Object to Prosecutorial Misconduct (Ground 8)

Linnear asserts in Ground 8 that his trial counsel erred by failing to object to alleged prosecutorial misconduct. Linnear claims that the prosecutor presented the court with "false motives" and that the prosecutor coached and coerced its witnesses so that they testified about the "false motives." (Pet. 5C). Linnear does not present any basis for his belief that the prosecutor coached or coerced witnesses. Linnear's contentions are clearly based upon nothing more than speculation. Linnear has not presented any facts that indicate that the prosecutor introduced any information at trial that the prosecutor knew was false or that the prosecutor engaged in any misconduct at trial. Finally, Linnear has not shown that his case was prejudiced by

his counsel's failure to object.  Therefore, we conclude that Ground 8 lacks merit.

### 8.  Failure to Prepare for Trial (Ground 10)

Linnear asserts in Ground 10 that his trial counsel failed to prepare for trial. However, Linnear fails to state any specific facts that would indicate that his counsel's preparation was inadequate.  Linnear contends that his counsel was unprepared since he did not call character witnesses to testify about the alleged violent demeanor of the victim, Wilford Raymond ("Raymond").  As is indicated above, the determination of what witnesses to call for the defense is left to the professional discretion of the trial counsel.  *Williams*, 106 F.3d at 1367.  In addition, the State correctly points out that Linnear's trial counsel called an officer to testify at trial about the violent demeanor of Raymond.  (R. Ex. X R127-29); *see Strickland*, 466 U.S. at 689 (stating that "[t]here are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way").  Finally, even if Linnear could show that his counsel was not prepared in the manner specified by Linnear, Linnear has not shown that his case was prejudiced.  Therefore, we conclude that Ground 10 lacks any merit.

### 9.  Failure to Impeach Witnesses (Ground 11)

Linnear asserts in Ground 11 that his trial counsel erred by failing to impeach

the State's witnesses. According to Linnear, some of the trial testimony of the witnesses contradicted their grand jury testimony. Impeachment of a witness is within the purview of the professional judgment of counsel and Linnear has shown no error by his trial counsel. Also, Linnear has failed to identify any specific testimony of the witnesses that Linnear believes contradicted the grand jury testimony. Finally, even if Linnear failed to attempt to impeach the State's witnesses, Linnear has not shown that his case was prejudiced. Therefore, we conclude that Ground 11 lacks merit.

### 10.  Failure to Present Evidence of Bias (Ground 12)

Linnear asserts in Ground 12 that his trial counsel erred by failing to present evidence that allegedly showed that the State's two female witnesses had a bias. Linnear contends that the witnesses lied on the stand in order to protect their "male friend." (Pet. 6A). However, Linnear does not provide any facts that would indicate that his belief concerning the witnesses' bias is based upon anything other than Linnear's own speculation. Also, although Linnear criticizes his trial counsel for "fail[ing] to supply the court with evidence" that showed bias, Linnear has failed to identify any evidence that his counsel could have used to show such bias. Finally, even if Linnear could show that his counsel could and should have presented certain evidence of bias, Linnear has not shown that his case was prejudiced by the alleged omission. Therefore, we conclude that Ground 12 lacks any merit.

## 11. Failure to Make an Effective or Proper Closing Argument (Ground 13)

Linnear asserts in Ground 13 that his trial counsel "failed to present an effective or prepared closing argument." (Pet 6B). However, Linnear has failed to provide any specific facts indicating that his trial counsel was unprepared for his closing argument. Linnear's assessment of his counsel's preparedness is not sufficient to show that the representation by his counsel was ineffective. Linnear has not presented any facts indicating that his counsel's closing argument was not "effective," and, regardless, Linnear merely has a right to representation that falls "'within the wide range of reasonable professional assistance. . . .'" *Almonacid*, 476 F.3d at 521 (quoting in part *Strickland,* 466 U.S. at 689). Linnear does not have a constitutional right to representation that he deems "effective" or to representation that secures an acquittal. Finally, Linnear has not shown that his trial counsel's closing argument prejudiced Linnear's case. Therefore, we conclude that Ground 13 lacks any merit.

## 12. Alleged Misunderstanding of the Law (Ground 14)

Linnear asserts in Ground 14 that his trial counsel erred by allegedly failing to accurately inform Linnear of the pertinent law. However, Linnear fails to offer the basis for his belief about the accuracy of his counsel's advice about the law. Also, Linnear states in a general fashion that he was not properly informed about the "correct laws and penalties that pertained to [Linnear's] charge," (Pet. 6B), but Linnear fails to specify which rules of law that he believes his counsel inaccurately

explained.  Finally, even if Linnear could show that his trial counsel misinformed Linnear concerning the pertinent law, Linnear has failed to show that his case was prejudiced.  Therefore, we conclude that Ground 14 lacks any merit.  Based on the foregoing, Linnear has not shown that he is entitled to habeas relief based on Grounds 1-3, 5-8, or 10-14.

## III.  Ineffective Assistance of Appellate Counsel (Ground 17)

Linnear also asserts that his appellate counsel on direct appeal did not render effective assistance of counsel due to his failure to raise the alleged errors by Linnear's trial counsel that are specified above.  (Pet. 3A).  However, as is explained above, there is no indication that Linnear's trial counsel's representation was not "'within the wide range of reasonable professional assistance. . . .'" *Almonacid*, 476 F.3d at 521 (quoting in part *Strickland,* 466 U.S. at 689)(stating that a trial counsel's decision "will not be judged with the benefit of hindsight").  Thus, Linnear's appellate counsel clearly did not err in failing to raise frivolous arguments concerning the representation by Linnear's trial counsel.  Linnear has also failed to show that his case was prejudiced by his appellate counsel's failure to raise such arguments on appeal.  Therefore, we conclude that Ground 17 lacks any merit.

## IV.  Whether the State Proved that Linnear was Guilty (Ground 16)

Linnear asserts in Ground 16 that the State failed to prove him guilty beyond a

reasonable doubt.  The due process rights of a defendant in a criminal case are "satisfied if, viewing the evidence in the light most favorable to the prosecution, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003) (emphasis in original)(quoting in part *Jackson v. Va.,* 443 U.S. 307 (1979)).  At trial, Linnear testified that he lived with his father and that two weeks before the shooting he agreed to demolish a building with his father and Raymond.  (R. Ex. X R154-55, 157).  According to Linnear, Raymond did not show up for work on the second and third days of the demolition job and Linnear refused to pay Raymond for those days, which created animosity between Linnear and Raymond.  (R. Ex. X R158-60).

Brandiya Jenkins ("Jenkins") testified at trial that she lived next door to Linnear and his father.  (R. Ex. E 1); (R. Ex. X R20).  Jenkins testified that on the evening in question, she was at home when she heard Linnear tell her mother and grandmother that someone had broken into Linnear's home and "jumped on" Linnear's father.  (R. Ex. E 1); (R. Ex. X R23).  Jenkins also testified that Linnear stated that he was going to "get the person" responsible for the incident.  (R. Ex. E 1); (R. Ex. X R24).  Jenkins further testified that she left her house with her boyfriend at the same time as Linnear and that she saw Raymond approach Linnear on the lighted street.  (R. Ex. E 2); (R. Ex. X R25-26).

According to Jenkins, Raymond had a bag of shoes in one hand and a plate of food in the other hand and Raymond asked Linnear, "What's up?"  (R. Ex. E 2); (R. Ex. X R27, 29).  Jenkins claimed that she heard Linnear tell Raymond that "ain't

nobody going to do this to [Linnear's] father anymore" and Linnear proceeded to pull out a gun and to shoot Raymond in the head.  (R. Ex. E 2); (R. Ex. X R29-30).  Jenkins also testified that immediately after the shooting she heard Linnear state, "Damn, I just shot him."  (R. Ex. E 2); (R. Ex. X R31).  Catherine Jenkins ("C. Jenkins") confirmed her daughter's version of the events, although there was a minor discrepancy as to when exactly Jenkins' boyfriend pulled away in his car.  (R. Ex. E 2); (R. Ex. X R61-62, 65-68).

Linnear testified at trial that when Raymond came up to him, Linnear thought he saw Raymond raise something "silver and shiny,"and Raymond lunged at him.  (R. Ex. E 5); (R. Ex. X R180).  Linnear claims he then put up his arms to protect himself and at that moment he heard a gun shot.  (R. Ex. E 5); (R. Ex. X R180-81).  Linnear admitted at trial that he then placed Raymond in his car and left Raymond on the ground in front of a hospital.  (R. Ex. E 5); (R. Ex. X R182-83).  Linnear admitted that he did not call the police or surrender for nearly two weeks after the shooting.  (R. Ex. E 6).

Based on the eyewitness accounts of Linnear's two neighbors and other evidence presented by the State, the trier of fact could have reasonably found Linnear guilty of first degree murder.  Linnear argues that the testimony of Jenkins and C. Jenkins is inherently unreliable because they disagreed about when Jenkins' boyfriend drove away.  However, that minor discrepancy was not of such importance as to preclude the trier of fact from believing the witnesses' testimony concerning Linnear's actions.  The testimony between the witnesses concerning what was

observed between Linnear and Raymond was consistent.  Linnear also argues that Jenkins and C. Jenkins had some sort of animosity towards Linnear, but Linnear admitted at trial that his family had a longstanding friendship with the Jenkins family.  (R. Ex. X R170).  Jenkins also testified at trial that at the time of the shooting she did not have any disputes or problems with Linnear.  (R. Ex. X R22). The trier of fact was able to assess the credibility of Linnear and Jenkins to ascertain whether animosity existed.  Thus, there was ample evidence upon which a reasonable trier of fact could have convicted Linnear of first degree murder.

## CONCLUSION

Based on the foregoing analysis, we deny the Petition.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:  May 24, 2007